**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Criminal No. 22-CR-296-1 (TJK)** |
| | : | |
| **ISRAEL MARQELL STEVENS,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENENCING

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing.   As set forth below, the government respectfully requests that the Court sentence the defendant, Israel Marqell Stevens, to 37 months of incarceration and 3 years of supervised release.   In support of this sentence, the government states the following.

### PROCEDURAL BACKGROUND AND EFFECTS OF RECENT DETENTION

On June 27, 2023, the Defendant pled guilty to Count One of the Superseding Information charging the Defendant with Unlawful Possession of a Machinegun, in violation of 18 U.S.C. § 922(o). The Defendant acknowledged that a conviction for Count One carries a maximum sentence of 10 years imprisonment, a fine of not greater than $95,000, and a term of supervised release of at least one year and not more than three years. He acknowledged he has an obligation to pay any applicable interest or penalties on fines and restitution not timely made, and a $100 special assessment.   At that time, the parties estimated that the Defendant's Offense Level would be 17, after a three-level reduction for acceptance of responsibility, and that he would have four Criminal History Points, which would result in a Criminal History Category of III and a Sentencing Guidelines range of 30 months to 37 months of incarceration.   See Presentence Investigation

1

Report dated October 12, 2023 (PSR), ECF Doc. 39, at ¶ 9.

After the Defendant entered his guilty plea here and while pending sentencing, he engaged in narcotics use while incarcerated at the D.C. Jail on September 19, 2022.   As described in ¶ 68 of the PSR, the Defendant reported using heroin during his period of incarceration and stated that "he enjoys using drugs and getting high." The PSR reports further that the Defendant acknowledged "using several illicit substances while incarcerated."

As a result of this development, the Defendant's admission for the offense described in ¶ 68, which he committed while pending sentencing in the instant case, would seemingly negate the three-level reduction to the Offense Level for acceptance of responsibility under U.S.S.G. 3E1.1. A defendant must "clearly demonstrate[] acceptance of responsibility for his offense" to be entitled to a decrease of the Offense Level.   U.S.S.G. § 3E1.1(a).   Even a defendant who enters a guilty plea is not entitled to an adjustment for acceptance of responsibility as a matter of right.   United States v. Leyva, 916 F.3d 14, 28 (D.C. Cir. 2019).   It is a defendant's burden to convince the court that he is entitled to the downward adjustment for acceptance of responsibility.   United States v. McLean, 951 F.2d 1300 (D.C. Cir. 1991).   Application Note 1 to § 3E1.1 provides that appropriate considerations for determining whether a defendant qualifies for a reduction include whether the defendant evidences the "voluntary termination or withdrawal from criminal conduct or associations," and "post-offense rehabilitative efforts."   While pleading guilty and truthfully admitting the underlying offense constitutes "significant evidence of acceptance of responsibility," "this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. n.3. "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," and the sentencing judge's

2

determination "is entitled to great deference on review." U.S.S.G. § 3E1.1 cmt. n.5; United States v. Bolton, 858 F.3d 905, 915 (4th Cir. 2017) ("We have upheld denials of reductions for acceptance of responsibility where, as here, the defendant continues criminal activity after apprehension, indictment, or guilty plea.").

The Defendant's admitted behavior here in continuing to engage in the commission of other crimes, while incarcerated pending sentencing, shows a clear failure to accept responsibility for his offense.   It also shows a failure to make rehabilitative efforts, and instead evidences recidivism and criminal predispositions.   The Defendant, thus, has not proven his entitlement to the three-level reduction to his Offense Level for acceptance of responsibility.

Accordingly, the Defendant's Total Offense Level without acceptance of responsibility would be 20, not 17, and Defendant's Sentencing Guidelines range would be 41 months to 51 months of incarceration, not 30 months to 37 months.   *See* PSR ¶ 84.

## FACTUAL BACKGROUND

On December 15, 2021, representatives of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), met with the Metropolitan Police Department ("MPD") 3rd District in reference to the ongoing violence in the 3rd District, specifically, Police Service Area 304.   ATF thereafter began investigating violent offenders and firearms traffickers in the Columbia Heights Village area of Northwest, Washington, D.C., including those involved in the installation or distribution of illegal converter switches, which render semi-automatic Glock handguns, or similarly styled firearms, fully automatic and are considered machine-guns under federal law.

During the course of the investigation, ATF learned of Isreal Stevens("Defendant") as an affiliate of a crew associated with illegal firearms that frequents the Columbia Heights Village apartments at 2900 14th Street NW, Washington, D.C.

On February 2, 2022, Defendant pleaded guilty in D.C. Superior Court case 2020 CF2 447 to Carrying a Pistol Without a License.

On February 7, 2022, MPD Officers in the 3rd District received reliable information that STEVENS was possibly in possession of a firearm and smoking marijuana inside of the apartment building located at 1309 Columbia Road NW, Washington D.C. (MPD CCN: 22-017-996). Officers responded to this location and contacted Defendant and a second individual.   A pat down of these individuals was conducted, and no contraband was found.

On February 8, 2022, MPD Officers in the 3rd District were patrolling the Columbia Heights Village area of Washington D.C. (CCN: 22-018-514).   While patrolling the area an MPD police officer observed Defendant, with two other individuals gathered around a vehicle.   The officer stopped near Stevens and the two individuals to speak with them.   Upon doing so, Defendant took unprovoked flight from the officer.   The MPD officer exited their vehicle and gave chase to Defendant.

During the chase, Defendant Stevens threw a firearm he was carrying.   The firearm was a personally manufactured 9mm Polymer 80 firearm, black in color, bearing no serial number.   The firearm had a converter switch affixed to the rear of the slide.   This attachment, commonly referred to as a Glock Switch or converter switch is an illegal device that allows a conventional semi-automatic Glock pistol to function as a fully automatic firearm.   The switch is classified as

4

a machine gun under federal law.   The firearm contained one round of 9mm ammunition in the chamber and 21 9mm rounds in the magazine

The officer heard the firearm hit the ground.   The officer stopped chasing the Defendant at the sound of the firearm hitting the ground and recovered Defendant's 9mm Polymer 80 firearm with machine gun converter switch, magazine, and 9mm ammunition on the pavement in Defendant's flight path.

The recovered firearm with the switch was sent to the ATF Firearms and Ammunition Technology Division for an official determination of the firing capability.   The report determined that the machine gun switch was designed and intended to, and did in fact, convert the semi-automatic firearm to a fully automatic firearm capable of firing multiple rounds with a single trigger pull.

After the Defendant threw the firearm, he sent text messages to at least five known associates admitting that he had thrown his firearm and his converter switch.

In one exchange with a telephone number ending "8642", the Defendant admitted he had thrown the firearm, writing, "I lost switch", he went on to say that law enforcement had "hop[ped] out" on Defendant and "I threw it".   Defendant further stated, "they found it too".

In a second exchange admitting he had thrown his firearm, Defendant wrote to telephone number ending "1552" that he had "fumble[d]" his "dog", using the slang term "dog" in reference to his firearm.

In a third exchange admitting he had thrown his firearm, Defendant wrote to telephone number ending "1392" that law enforcement was out in front of his house, "looking for me [sic] lost doggy", again, Defendant used the slang term "doggy" in reference to his firearm.

In a fourth exchange admitting he had thrown his firearm, Defendant wrote to telephone number ending "4543" that law enforcement had chased him, that he had "lost" his "dog", again in reference to his firearm, and that law enforcement had "see me throw da dog", again using the term "dog" in reference to his firearm.

In a fifth exchange admitting he had thrown his firearm, Defendant wrote to telephone number ending "3157" that law enforcement had seized his "stick", using the term "stick" to reference his thrown firearm.

An arrest warrant was subsequently issued for Defendant for Carrying a Pistol Without a License (CPWL) stemming from the February 8, 2022, firearm recovery.

On March 17, 2022, MPD officers arrested Defendant on the outstanding arrest warrant in the Columbia Heights Village area of Northwest Washington, D.C.   Defendant was searched incident to arrest and found in possession of a baby bottle containing a purple liquid of promethazine and codeine, a Schedule V Controlled Substance.

On March 25, 2022, MPD Officers of the 3rd District were contacted by Special Police Officers working for the Columbia Heights Village property management.   Officers were informed that Defendant had been detained by Special Polices Officers for being on private property after being barred from the property.   Defendant was arrested for Unlawful Entry.   A cell phone was seized from Defendant during a search incident to arrest.

Evidence on Defendant Stevens' cell phone indicates that Defendant is involved in buying and selling firearms, including illegal machine-gun switches.   In one exchange, Defendant was offered illegal conversion switches for sale at a reduced cost if multiple illegal switches were purchased.   Defendant shared this information with other known associates.   Defendant and the seller later rendezvoused.    In another instance, Defendant connected an illegal firearms dealer with a potential firearms purchaser.

On June 23, 2022, MPD observed Defendant conducting a hand-to-hand transaction with another individual in the Columbia Heights neighborhood of Northwest Washington, D.C. Defendant and the individual were stopped and a green leafy substance consistent with marijuana was recovered.

A search of Defendant incident to arrest uncovered a prescription pill bottle containing 58 oxycodone pills.   The prescription pill bottle was made out to another individual with last name "Anderson".

## EVIDENCE OF ADDITIONAL CRIMES

The USAO and ATF further reviewed the Defendant's cell phone as part of an ongoing criminal investigation into the CHV crew's criminal activities. In doing so, the government observed evidence of varying crimes committed by the Defendant in furtherance of narcotics trafficking, illegal possession of firearms, and fraud. For instance, in a screenshot saved on Defendant's cellphone, the government observed a conversation wherein the Defendant seems to recruit a 13-year-old to sell narcotics. The 13-year-old ("JUVENILE") responds to an Instagram "story" wherein the Defendant posts a picture of a large bag of marijuana. The conversation is as follows:

7

**JUVENILE** says, "top soijia[1] im tryn make sum money im a youngin too. 13 yr old."

**STEVENS** responds, "Hit me on tele[2]."

**JUVENILE** responds, "ok lemme download it back rn. Tbh it dont matter how u want me too if u need me bag ni***s or what no hot shyt 100."

In the above conversation, a juvenile reaches out to the Defendant once he posts a picture of marijuana. The juvenile then offers to work for the Defendant and the Defendant "loves" the comment and instructs the juvenile to reach out to him using an encrypted chat seemingly in order to hide his activity from law enforcement. The image of the conversation is depicted below:

---

1 Top Soulja is a known nickname for the Defendant.
2 Tele is shorthand for the application called Telegram. Prospective buyers contact drug traffickers on social media apps in response to their advertisements – either using direct messaging or by commenting on a post. Once contact is made, drug traffickers and potential buyers often move to an encrypted communications app like WhatsApp, Signal, and Telegram. Drug traffickers typically switch to these encrypted communications apps to arrange drug deals with prospective buyers. (https://www.dea.gov/sites/default/files/2022-03/20220208-DEA_Social%20Media%20Drug%20Trafficking%20Threat%20Overview.pdf)



(Exhibit 1)

In another image found on the Defendant's cell phone, he is seen holding a firearm with the words, "We banging chv."



(Exhibit 2)

In another conversation, the Defendant is asked how many more money orders he can get and seemingly utilizes someone's personal information to commit bank fraud. Additionally, the Defendant had numerous pictures of checks throughout his phone and "how to" files saved that indicate his participation in fraudulent activity.

| 35839 | Instant Messages | Incoming | | | 7/20/2022 6:47:54 PM(UTC+0) | From: +14244779249 KC To: +13013778350 _$!<Other>!$_ (owner) To: +13013778350 _$!<Other>!$_ (owner) | How many more of these money orders you can get? Source: Native Messages |
|---|---|---|---|---|---|---|---|

(Exhibit 3)



(Exhibit 4)                                (Exhibit 5)                                (Exhibit 6)

The above pictures show a conversation regarding money orders and various pictures of checks that are not in the Defendant's name. The identities and account numbers on the checks have been redacted to protect the identities of potential victims.



(Exhibit 7)

The above picture shows several files describing how to commit various criminal acts with several financial entities.



(Exhibit 8)

The above picture shows a message between the Defendant and another individual wherein the

Defendant appears to be committing bank and wire fraud by creating a fraudulent account for the purpose of depositing a bad check.



 (Exhibit 9)

The above picture shows a screenshot on the Defendant's phone indicating a bad check was deposited into an account and then an attempt was made to immediately transfer the money to

another account.

**SENTENCING FACTORS**

In sentencing a defendant, after calculating the appropriate guideline range, the Court must consider the factors set forth in 18 U.S.C. Section 3553. See Gall v. United States, 552 U.S. 38 (2007). These factors are in keeping with the traditional factors used by courts when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses. See Spanziano v. Florida, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); see also Williams v. New York, 337 U.S. 241, 251 (1949). Finally, under the guidelines and Section 3553, similarly situated defendants should receive like punishments. See 18 U.S.C. Section 3553(a)(6).

First, the government views this as a very serious offense. The Defendant was a member of the CHV crew and was engaged in narcotics trafficking in Columbia Heights Village area of Northwest, Washington, D.C. Furthermore, the Defendant has pleaded guilty to possession of a machinegun which he tossed during a foot chase by MPD. A search of his phone indicated further criminal activity including conversations and images that appear to reference bank and wire fraud, narcotics related activity, and a conversation wherein he seems to engage with an individual who identifies himself as a 13-year-old who is looking to work for the Defendant.   His possession of a machinegun, one of the most dangerous types of firearms in our community, coupled with his involvement in various other criminal activities, establishes that the Defendant was indifferent to the destruction he was causing to his community. Machineguns are intended to spray a high volume of bullets indiscriminately and, when one is fired, is likely to cause injuries to unintended victims

in the area.   Firearms shootings contribute to the decay in our community and account for tens of thousands of deaths in this country each year.[3]   The fact that the Defendant seemed to solicit a 13-year-old's help in selling drugs makes the Defendant's criminal activity even more egregious. In Washington, D.C. just last year, shootings are up 20 percent, and more juveniles have been killed so far this year than in all of 2022.[4]   His actions in the community shows his clear disregard for the individuals in the community.

The fact that the Defendant has a prior firearms conviction and was on supervision during the instant offense makes his present behavior even more egregious.   See PSR ¶ 41.   After his guilty plea in that case, the Defendant escalated his conduct and possessed a machinegun in the instant case. The law makes clear that such an offense is of a kind that requires serious consequences, to deter the recurrence of such conduct. A strong, though appropriate, sentence is necessary to ensure the safety of the community and, hopefully, to deter defendant Stevens from engaging in similar criminal conduct in the future.

Second, not only does the Defendant have a prior gun conviction and he was on supervision in that case during the offense at issue here, but he has also now acknowledged involvement in narcotics use in the Jail while awaiting sentencing in the instant case.   To make things worse, the Defendant acknowledges using a variety of drugs while awaiting sentencing because "he loves to get high."   Not only does this show that he has not been deterred from committing crimes, but he

---

3  Gramlich, J. (2023, April 26). *What the data says about gun deaths in the U.S.* Pew Research Center.
    https://www.pewresearch.org/short-reads/2023/04/26/what-the-data-says-about-gun-deaths-in-the-u-s/

4  Hermann, P. (2023, August 19). *Homicides are falling in many big cities. in D.C., they're rising.* The Washington Post.
    https://www.washingtonpost.com/dc-md-va/2023/08/19/dc-homicides-rising-major-cities/

is also continuing to commit crimes.   This is a strong indication that the Defendant will continue to be a lawbreaker both during his incarceration and after he is released.   Obviously, he has continued to engage in acts that exhibit a reckless disregard for the law and his community, and his criminal behavior is increasing in severity by involving a destructive weapon intended to quickly shoot a high volume of bullets.   A sentence of 37 months incarceration will provide needed deterrence in order to protect the community from the varied nature of Defendant's criminal behavior.

A sentence of 37 months of incarceration followed by three years of supervised release will also provide the Defendant with an adequate amount of time to take advantage of many of the programs offered by the Bureau of Prisons (BOP). These programs are intended to provide the Defendant with skills he needs to re-enter society as a contributing member of it and to fulfill his societal responsibilities. The Probation Office has researched and identified available programs within the BOP, and the government hopes that the Defendant will take full advantage of those programs during his incarceration.   These programs include the Federal Prisons Industries Program, and Drug Abuse Education Program (PSR at ¶¶ 93-94), and they are crucial to achieving the reformation of the Defendant into a productive, law-abiding citizen.

WHEREFORE, for the foregoing reasons and for any other reasons that may be raised at the hearing on this matter, the government asks that the Court sentence the Defendant to term of incarceration of 37 months, consecutive to any other sentence, to be followed by 3 years of supervised release.

Respectfully submitted,

17

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar 481052

By: _Christopher Marin_____

CHRISTOPHER MARIN
Assistant United States Attorney
N.Y. Bar Number 5530068
United States Attorney's Office
601 D Street, NW
Washington, D.C.  20530
Telephone: 202-252-2644
Email: Christopher.Marin@usdoj.gov

18